UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CONTINENTAL CARBON COMPANY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 07-CV-0383-CVE-SAJ |
| | ) |
| UNITED STEEL, PAPER AND FORESTRY, | ) |
| RUBBER, MANUFACTURING, ENERGY, | ) |
| ALLIED INDUSTRIAL AND SERVICE | ) |
| WORKERS INTERNATIONAL UNION, | ) |
| AFL-CIO, CLC and its LOCAL UNION | ) |
| NO. 13-857 | ) |
| | ) |
| **Defendants.** | ) |

**OPINION AND ORDER**

Now before the Court is Plaintiff Continental Carbon Company's Brief Regarding Subject Matter Jurisdiction under 29 U.S.C. § 185 (Dkt. # 42). At the pretrial conference held July 24, 2008, the Court raised the issue of its subject matter jurisdiction to hear this case. Specifically, it appears that Continental Carbon Company ("Continental") is asking to the Court to resolve an issue of procedural arbitrability that must initially be determined by an arbitrator. The Court granted Continental's request for an opportunity to brief this issue, and Continental filed the brief referenced above. Defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC and its Local Union No. 13-857 ("the Union") has not filed a response.[1]

---

[1] Although the Union has not filed a response, the Union's trial brief (Dkt. # 39) addresses the issue of procedural arbitrability and the Court refers to the trial brief when discussing the Union's arguments.

**I.**

Continental owns a manufacturing facility in Ponca City, Oklahoma where it manufactures carbon black. The production and maintenance employees at the facility belong to the Union, and the Union negotiated a collective bargaining agreement ("CBA") with Continental on behalf of these workers. The CBA covers a wide range of topics concerning the terms and conditions of employment, and the current version of the CBA remains in effect until September 30, 2009. The CBA requires Union employees and Continental to follow a five step grievance and arbitration process to resolve labor disputes. The grievance and arbitration process is located at Article 13 of the CBA. Dkt. # 2, at 30-32. Relevant to the present dispute is step four of the grievance process, which states:

> If no satisfactory settlement is reached in the STEP 3 meeting, the Union may then refer the grievance to STEP 4 by notifying, within seven (7) days of the STEP 3 answer, the Plant Manager or his/her designee in writing, if not timely submitted to said person, the grievance shall be deemed waived and abandoned. The case shall be reviewed One-on-One by the Plant Manager, or his designee, and the International Representative of the Union, or his designee. If no satisfactory settlement is reached under STEP 4, the Company's written answer shall be given within seven (7) days. Then the Union may request in writing that the grievance be submitted to binding arbitration unless it involves a matter specifically withdrawn from arbitration by virtue of the provisions of this Agreement. Submission to arbitration shall occur within thirty (30) days of the STEP 4 answer, or it shall be deemed waived and abandoned.
>
> (a)
> Within ten (10) days after receipt of the request for arbitration, the Union's representative shall request a list of seven (7) arbitrators from the Federal Mediation and Conciliation Service and the parties shall select therefrom one (1) arbitrator by alternately deleting names from the list until a last name remains. The ten (10) day time limit period referred to above may be extended by mutual agreement of the parties in writing. Each party may request one panel.
>
> (b)

> The arbitrator selected in accordance with the above procedure shall decide the dispute and his decision shall be final and binding on the Employer, the Union and the employee(s), provided the arbitrator shall only have the authority to decide if the Employer violated the express terms of this Agreement and he shall have no authority to add to, subtract from, supplement or modify this Agreement in any way or to rule on any matter except while this Agreement is in full force and effect between the parties.

Id. at 31. Article 13 includes additional provisions concerning an arbitrator's power to award damages and limitations on the arbitrator's authority.

On July 11, 2007, Continental filed this lawsuit to compel specific performance of the arbitration provisions of the CBA. In the alternative Continental seeks dismissal, under the doctrines of laches or equitable estoppel, of pending grievances that were originally filed in 2005 and 2006. Under the terms of the CBA, the Union has 30 days to demand arbitration if a grievance has been denied by Continental. The parties do not dispute that the Union has filed timely demands for arbitration of many grievances, but Continental claims that the Union has refused to request a panel of arbitrators from the Federal Mediation and Conciliation Service after requesting arbitration or has refused to strike names once a list has been requested. The Union's inaction effectively delays resolution of a grievance indefinitely, because the grievance can not proceed until a panel of arbitrators has been requested and both sides have stricken the appropriate number of arbitrators. Continental views this tactic as a failure to arbitrate and asks the Court to order the Union to comply with the arbitration procedure and has identified 77 open grievances dating back to 2005 that have not been submitted to an arbitrator for hearing. Continental claims that the Union has purposefully delayed arbitration of many disputes and its ability to handle personnel matters has been severely impaired.

The Union responds that the parties had an informal agreement to control the flow of grievances proceeding through arbitration. According to the Union, the parties agreed to keep two grievances active at any particular time. Specifically, the Union claims that it "suggested and Plaintiff acquiesced" in a procedure where the parties would submit post-hearing briefs on one arbitration and select an arbitrator for the next grievance. Dkt. # 35, at 3. The Union alleges that, in Spring 2007, Continental backed out of the informal agreement and demanded immediate arbitration of all pending matters. The Union also argues that this Court lacks subject matter jurisdiction to hear this case because it requires resolution of issues of procedural arbitrability that must be considered by an arbitrator before Continental may seek judicial review.

## II.

Continental argues that the Union is required to request a panel of arbitrators within ten days of demanding arbitration but the Union is not complying with this requirement. According to Continental, the Union's failure to resolve grievances as required by the CBA is a breach of the CBA, and Continental seeks specific performance of the CBA. Dkt. # 42, at 5-6. The Union argues that Continental's claims involve matters of procedural arbitrability and the Court lacks subject matter jurisdiction. The parties do not dispute the relevant facts and the Union freely admits that it has not requested a panel or struck names in many pending grievances. However, the Union argues that Continental's claims for specific performance of the CBA and dismissal of grievances must be resolved by an arbitrator rather than a federal court.

The parties agree that "[w]hether or not an employer is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by courts on the basis of the contract entered into by the union and the employer." Dkt. # 33, at 9 (citing John Wiley & Sons, Inc. v. Livingston,

4

376 U.S. 543, 547 (1964)). This principle goes to the substantive arbitrability of a dispute, but the issues raised by plaintiff do not concern substantive arbitrability. The parties do not dispute that the subject matter of the underlying grievances must be submitted to arbitration under the CBA. The Union argues that the alleged breach of the CBA goes to matters of procedural arbitrability, and questions of procedure should be decided by the arbitrator in the first instance. Denhardt v. Trailways, Inc., 767 F.2d 687 (10th Cir. 1985) ("the court's role is limited to determining whether the parties submitted the 'subject matter' of a particular dispute to arbitration. If so, then any attendant procedural issues are for the arbitrator as well."); United Steelworkers of America AFL-CIO-CLC v. Ideal Cement Co., Division of Ideal Basic Indus., Inc., 762 F.2d 837, 840 (10th Cir. 1985) ("Procedural arbitrability disputes should not be resolved by the courts, since the system's inherent delays and increased costs would significantly frustrate the aims of our national labor policy."). This does not bar subsequent judicial review of the arbitrator's decision. The Tenth Circuit has stated that:

> [j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate.

Kennecott Utah Copper Corp. v. Becker, 186 F.3d 1261, 1266 (10th Cir. 1999) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)). In Public Service Co. of Oklahoma v. International Brotherhood of Electrical Workers, 2008 WL 607437 (N.D. Okla. Mar. 3, 2008), this Court held that matters of procedural arbitrability are subject to post-arbitration judicial review but the Court must apply a deferential standard of review. Id. at *6.

The Court finds that Continental's complaint raises an issue of procedural arbitrability and the Court lacks subject matter jurisdiction to resolve this dispute. Issues of substantive arbitrability concern "whether the parties have contractually agreed to submit a particular dispute to arbitration" and the Court must consider substantive arbitrability before a case is submitted to arbitration. Denhardt, 767 F.2d at 690. On the other hand, procedural arbitrability "concerns such issues as 'whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoid the duty to arbitrate.'" Id. (quoting John Wiley & Sons, 376 U.S. at 557). In this case, there is no dispute that the parties have agreed to arbitrate the grievances and that the Union has advanced the grievances to arbitration. A problem has arisen within the arbitration proceedings, because the Union refuses to request a panel or strike the list of arbitrators within the timeframe established in the CBA. An order compelling arbitration would not aid Continental with the prosecution of open grievances, because arbitration has already been demanded in each of the contested grievances. See id. ("Thus the court's role is limited to determining whether the parties submitted the 'subject matter' of a particular dispute to arbitration. If so, then any attendant procedural issues are for the arbitrator as well."). If the grievances are not being resolved quickly enough or Continental has been prejudiced by the Union's conduct, Continental must obtain a decision from an arbitrator before seeking judicial review.

Continental's own arguments highlight the difficulty that would be presented if the Court permitted this case to proceed to trial. Continental claims that it is "not asking the Court to consider any issues of substantive or procedural arbitrability. Rather, Continental is asking the Court to order the Union to engage in the agreed upon arbitration process." Dkt. # 42, at 8. The Court finds no

6

material difference between ordering the Union to comply with arbitration procedures and ruling on issues of procedural arbitrability. If the Court were to order the Union to request a list of potential arbitrators and start striking names, the Court would essentially be taking over the arbitration process. At the pretrial conference, counsel for Continental and the Court addressed this issue:

> Mr. Petrikin: . . . . All we're asking the Court to do is to make a finding that they breached the contract by not arbitrating the cases and ordering them to proceed to arbitration within a reasonable period of time.
>
> The Court: No, you're asking me to order them to get a panel of arbitrators from the service and start striking names --
>
> Mr. Petrikin: Exactly.
>
> The Court:  -- which is a procedure.
>
> Mr. Petrikin: Well, it is a procedure.

Dkt. # 41, at 13. Continental has cited numerous cases recognizing the well-established principle that federal courts are authorized under section 301 of the Labor Management Relations Act to enforce an arbitration provision in a CBA. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 561-62 (1976); General Warehousemen & Employees Union No. 636 v. American Hardware Supply Co., 329 F.2d 789, 792 (3d Cir. 1964); Lodge No. 12, Dist. No. 37, Int'l Ass'n of Machinists v. Cameron Iron Works, Inc., 292 F.2d 112, 117 (5th Cir. 1961). However, these cases do not stand for the proposition that federal courts have subject matter jurisdiction to resolve procedural disputes after a case has already been advanced to arbitration.

In most cases when a party seeks to compel arbitration, a court is asked to determine whether the subject matter of the dispute is arbitrable. If the matter is arbitrable, arbitration is compelled and the parties follow their agreed-upon procedure for arbitrating disputes. In this case, the Union has

found a loophole in the arbitration procedure by which it may submit a matter to arbitration without moving the proceeding forward within the time provisions set forth in the arbitration agreement. Under the plain terms of the arbitration agreement, the Union has demanded arbitration of numerous grievances. However, grievances are not being arbitrated as quickly as Continental would like, due to the Union's alleged refusal to request a list of arbitrators or strike arbitrators. The Union's actions have placed Continental in a difficult position and the Court does not condone the Union's conduct. However, the Court lacks subject matter jurisdiction. To grant the relief requested by Continental, the Court would have to interfere with pending arbitration proceedings to order the Union to comply with certain procedures. Under Tenth Circuit precedent, the Court would clearly be exceeding its authority by granting the proposed relief. As previously noted, Continental may raise its procedural arguments to the arbitrator and, if the arbitrator rules against it, seek judicial review of the arbitrator's decision in federal court. Until the issue has been resolved in arbitration, Continental may not seek judicial review of the Union's practice of refusing to request a panel or strike arbitrators within the deadlines established by the CBA.

**IT IS THEREFORE ORDERED** that the case is **dismissed** for lack of subject matter jurisdiction. A separate judgment of dismissal is entered herewith.

**DATED** this 3rd day of September, 2008.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT